15-1319 et al. Osburn-Hessey Logistics, LLC Petitioner v. National Labor Relations Board Ms. Abadzi for the petitioner, Mr. Tsai for the respondent. Good morning, Your Honors. May it please the Court, I'm Ben Badzi here on behalf of Osburn-Hessey Logistics. Your Honors, I want to start by talking about DeShante Johnson's termination. And the facts are undisputed. Mr. Johnson jumped over a moving conveyor belt. No one disputes that. That's the fact. But we still fired him because of that. The question becomes whether he was fired as a result of his union support or whether there's any motivational link to his union support. So, Your Honors, we submit respectfully that Member Miscimera, in his dissent, articulated why the comparators that were pointed to by the NLRB were not similarly situated to Mr. Johnson. Is it in your jurisdiction to hear this argument, given that it wasn't made in your exceptions to the Board? It was made in the exceptions, but not the brief in support of the exceptions, Your Honor. What was it made in the exceptions? What in the exceptions put the Board on notice of this argument? The exception that Mr. Johnson had... I'm sorry. The exception that the Board had not made its prime official case on the right line. And specifically in Member Miscimera's dissent at footnote 5, he points out that Osburn-Hessey had raised that issue in... So he seemed to concede that the argument wasn't made in your objections. Your Honor, I didn't read footnote 5 of his decision the same way. What he points to is the exception that OHL made, but then goes on to say it wasn't argued in the briefs, was the way I understood what he was saying in that footnote. Yeah, I mean the exception's in the record. Right. You could argue it was too vague, but it's in the record. It is, Your Honor, and it was clearly enough for Member Miscimera to understand that OHL was challenging whether there was disparate treatment in terms of Mr. Johnson. My concern here, A, we have a deferential standard of review, as you know. So even if I might have agreed with the dissenting member below not to apply a deferential standard. And two, correct me if I'm wrong, never before had someone been fired for crossing a conveyor line like this. That is the case, and let me address those in order, Your Honor. So in terms of the deferential standard of review, the standard does talk about a departure from established board law. And established board law, we submit, Your Honor, includes this motivational link that Member Miscimera discussed. And specifically in the American Gardens case that we cite in our brief, it clearly talks about that motivational link. And so we would argue that there was a departure from established board law in not applying a motivational link as part of the prime official case under Wright line. Are you saying that the evidence didn't support, fell short of the substantial evidence standard for the proposition that they were aware of his, that the acting persons on behalf of the company were unaware of the union activity? That's part of our argument, Your Honor, and we do argue that in our brief. The person who made the decision that's undisputed was Van Young, the HR manager. There's nothing in the record that shows that she had any knowledge of Mr. Johnson's union activity. So that's one point that goes to the prime official case under Wright line and whether there's substantial evidence to support it. Are there quite a few cases finding that the company, fairly high-level company employees, are very likely to be aware of the union activity of someone who is very actively working on behalf of the union? Well, a couple points I would make there, Judge Williams. The testimony from Mr. Johnson in the record is that he had a conversation with his direct supervisors about his union support. There's no evidence that then ties that to Ms. Young, who's the decision maker. And Ms. Young, I believe, testified, Your Honor, that she had no direct knowledge of his union support. So there's got to be- You said she had no direct knowledge? I don't remember the quote, Your Honor. I can't- Testify. Well, the supervisors were not involved in the particular incident. The supervisors to whom he complained, Mr. Walker and Mr. Cousineau, were not the ones that observed him jumping over the conveyor belt. So they're not in the chain of decision-making that led to the termination. So the people that he claims had knowledge of his union support are not in the chain of decision-making that led to the termination. But back to your point, Judge Kavanaugh, about whether there had been a termination for this in the past. There hadn't been. But there had been terminations for safety violations. I know that. But on this, even the sending member said the evidence shows that other employees were treated more leniently than Johnson. So when you have that circumstance, okay, you have a group of people. A lot of them are treated leniently. One is fired. It's not an outrageous conclusion to say, hmm, I wonder why this person was treated differently. Perhaps it could be his extensive union activity. And a couple of points that I would make in response to that. One is that in terms of the other people that had done it in the past, again, there was no testimony that Ms. Young had any knowledge of that. And, in fact, she testified this was the first time she had ever heard of anyone jumping over a moving conveyor belt. Apparently it happened all the time, though, right? Well, it may have without her knowledge. Right. But she was the decision maker. And also in terms of other people doing it in the past, as Member Miscamara pointed out, there's no indication of whether those people were union supporters or not union supporters. And so how do we know that Mr. Johnson was treated disparately based on his experience? Well, you don't know, but you have to make the best, the ALJ had to make the best evaluation possible, given the facts. And a lot of these cases, discrimination on the basis of whatever the characteristic may be involved inferential reasoning. They do, Your Honor, but there are also nine other terminations. And I would also point to nine other terminations for other safety reasons, to be clear. And I would also point out that six of those nine were in the year that preceded Mr. Johnson's termination. And there's testimony in the record that was cited in our brief. Ms. Miles was the senior director over Ms. Young, and she had started to emphasize safety violations and taking them more seriously. Didn't that take the form of raising the first response from an oral warning to a written warning? She did testify about that with respect to not wearing seat belts on forklifts. I mean, she didn't specifically testify about this particular safety issue. But to your point about oral warnings, Judge Williams, there is record evidence that we talked about in our brief, where DeShante Johnson had been verbally warned about having a sword fight with broomsticks less than a week before he jumps over the moving conveyor belt. So it's not as if there hadn't been a discussion with him about his behavior in the workplace. I disagree in that two ways. I mean, if you assume he's not very good at generalizing propositions, which the record suggests, then no sword fights, he takes that on. But jumping over the conveyor belt, that's a completely new matter. Right, and I think the court probably saw that his testimony was if there was a sign there, I wouldn't have done it. And what we've pointed to in all seriousness, Your Honors, is that OHL does have safety policies. And just because the safety policies doesn't say don't jump over a moving conveyor belt, it does talk about the proper use of equipment. It does talk about employees being responsible for their own safety. So there has to be a modicum of common sense that's applied to understand what the safety policy means. And so when Judge Brekosch, ALJ, says there was no policy, there are policies, and they're in this record. Your Honors, I'll save the rest of my time for rebuttal. Well, before you sit down, it's unfortunate that neither side cited either of these cases in your briefing. But just last year in two different cases, Nova Southeastern University v. NLRB and Health Bridge Management LLC v. NLRB, we held that we didn't have jurisdiction to consider exceptions where there was some vague statement made and it wasn't argued to the board. And I don't really see how you can distinguish those cases here. Your Honor, the Nova case did come up, and we do distinguish it in our reply brief. And I believe the distinction there was that there had not been an exception on the issue, but there was briefing on the issue. Here our position is there was an exception on the issue, and we think the Davis supermarket case that we cited in our reply brief is actually the controlling case on that. The exception that you're referring to is the one at JA 300, I think it's 5C. That's the exception that says the administrative law judge's finding on lines 22 through 23 of page 8 of her decision that the general counsel had clearly met his burden under the initial prong of the right-line analysis. Yes, Your Honor. And so your position is that if an exception is filed to a finding that the general counsel met their burden under the initial prong of the right-line analysis, that brings the board's attention to the argument that there has to be a specific finding made of disparity with respect to the comparators and their union's status? Your Honor, it is our position that that is sufficient to put the board on notice that we're challenging the ALJ's decision on the application of primary fiduciary liability. But even when the board majority says, we didn't get that from your exception and you didn't argue that in your briefs, I mean, the board said that. It did, Your Honor. Doesn't that deserve any sort of deference or recognition by this court, that the board didn't think that it was aware of this argument?  Your Honor, that's certainly a way to look at it. But the dissent makes clear that he was on notice of the argument, or at least the prospect of the argument. He said that it was an unargued issue in sites in his dissent where he had made that argument before. So it appeared that this was, you know, an issue that was of concern to him. And he had raised it in a prior dissent, I think, and he was raising it again in dissent. And, Your Honor, I understand that. Remember, Ms. Kamara's issue had to do with comparators, right, Your Honor? And he saw it as fitting in to the prima facie right-line burden, which is what OHL accepted to. OHL did discuss at length in its brief to the board the issue of similarly situated comparators. It just didn't do it in the context of the prima facie case under right-line. He saw it as more of an issue under the prima facie case under right-line, which OHL had filed an exception to, but didn't make the specific argument in its brief regarding that member Ms. Kamara made regarding the prima facie case. Thank you. Good morning, Your Honor. Good morning. David Sykes, the Labor Board. Substantial evidence supports the board's finding that the company unlawfully discharged an employee, Johnson. With respect to the unlawful motive here, there's no serious dispute that Mr. Johnson was an open union supporter. He wore union clothing, regularly wore a sticker. This was going on for almost two years prior to his discharge. He had also spoken to his operations manager at the casino regarding the union. And to the company's claim that union resources manager Young had no knowledge of either his union activity or that others had crossed over the line, crossed over the conveyor belt, this is not taking place in a vacuum. Very simply, operations manager at the casino, who was at the meeting when Johnson was discharged, he obviously not only knew about the union activity, but he also admittedly knew that others had crossed the line. And he personally stated and testified that he had never previously disciplined anybody before. And that's in the board's decision. Suppose everyone who had done this before and been treated more leniently was also involved in the union. Could you conclude that the firing in this case was because of union activity, if those were the facts? Yes, you could, and I realize that that's addressing the argument that's raised by the board's dissent and the board's position is that it's not properly before this court. But nevertheless, under well-settled case law, an employer doesn't have to weed out all union adherence. And as set forth in the board's decision, this is taking place just after there's been a second election, an election won by the union by one vote is in the process of being litigated. And since then, this court has enforced the board's certification of the union. So in the context of an election that's being challenged where one vote or two votes can end up changing if there ends up being a third election based on the company's objections to it, the idea that they would want to weed out additional union adherence is certainly a very reasonable and plausible interpretation. And if I could just also just briefly state, company counsel indicated that he didn't believe or he thought that human resources manager Young had testified that she didn't know about Johnson's activity. Board counsel is not aware of any statement to that effect in the record. And again, Mr. Cassino, he had had, there was evidence that the board had found that he had knowledge of union activity. And as far as any of the, not only the prior history, but even the subsequent history when almost a year later an employee was discharged from jumping over the conveyor line, that came only after the company had imposed some additional training. And only after that employee, even at that point, had still received a warning before being discharged. And part of it had to do with the fact that that particular employee had been a member of the safety committee and should have known better. And with respect to the company's reliance on the board's dissenting opinion, as the board set forth in its brief, and the first, this court has no jurisdiction to consider that argument because it was not properly raised before the board in the exceptions. And secondly, even putting aside jurisdiction, it was incumbent upon the company in its opening brief to this court to explain how the board majority had erred as to how the exception and the argument was properly before the board. Its opening brief is completely void of any argument as to how the issue raised by the board's dissenting member had been in fact raised to the board and that the board majority erred in its finding. What's your best case for the level of specificity required by 10E? Very simply that the board does need to be apprised of the specific argument being raised. So how specific does it have to be? It needs to be. The exception here identified a branch of the right-line test. How much more is needed? Your Honor, because it's not clear from the exception, is the company making a factual argument? Is the company making a legal argument? And what it's ultimately arguing is essentially that there's a fourth part to the board's test, that there needs to be a certain nexus. And that's a position that the board has decided that there is no additional fourth part of the right-line test. You've lost me. I'm trying to get your vision of the best circuit case law on the specificity required in an exception for it to get through the 10E hurdle. I apologize, Your Honor, for your misinterest in the question. As far as the court case, there would be the cases that were cited by the board in its brief. I believe that we cited the Varsifini case in this court and also the Allen case and the Nova case. And the board also did cite to the Health Bridge Management case that Judge Wilkins alluded to. Those were all cited in the board's brief. So, yeah, I mean, you cite Varsifini. I see this. And the language there is that there's no specific argument in support of this exception. So, specifically, I mean, how effective was it? In that case or in this particular case? In that case. I mean, that case evidently fell below our standard. Right. Well, the board does need to be put on some notice as to what an employer, in this case the company, is trying to argue. Because it could be a factual argument. It could be a legal argument. And when the board has the exception here, and then in the context of the brief that's filed in support of exceptions, the brief doesn't mention anything about the general counsel's affirmative burden but simply relies solely on a claim that it showed by repondence to the evidence that Johnson would have been discharged otherwise. The board, as the dissenting board member states, even he acknowledges that this is something that he is essentially raising on his own. And if this court has no further questions, the board would simply ask that this court enforce the board's order. Thank you very much. Thank you, Your Honor. I'll give you two minutes for rebuttal. Thank you, Your Honor. Two points that I'd like to make. One is, with respect to the Tenney argument, I'd direct the court to pages three to four of OHL's reply brief where we do distinguish the cases, the Nova case and the Alwyn case, and specifically cite the Davis supermarket case, which is the only case where there's an issue of an exception being made but no brief on that exception before the board. And so I wanted to reiterate that. The second point I would make, Your Honors, is that the Tenney argument is not dispositive here. OHL has preserved the argument that it carried its right-line rebuttal burden. And what Judge Brayquist, ALJ found, was the reason OHL had not carried its right-line burden is because she dismissed the comparators that OHL did offer, and she said that they had arguably more egregious conduct. Well, that may or may not be the case, but there was no argument or analysis. I'm sorry, there was no analysis whatsoever in her decision about what makes those comparators arguably more egregious. There was no discussion of what makes it arguably more egregious. And so if you're going to dismiss the comparators and say they're arguably more egregious, there at least has to be something explaining why they're arguably more egregious or drawing distinctions that make them arguably more egregious. So that was the other point I wanted to make on rebuttal. Thank you, Your Honors. Thank you. The case is submitted.
judges: Kavanaugh, Wilkins, Williams